# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Cr. No. 1:06-123 |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Martin F. Salazar, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Martin F. Salazar ("Defendant"), a pro se prisoner, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Defendant is presently out of custody on supervised release, pursuant to a sentence from the United States District Court for the District of South Carolina.  Defendant filed the within § 2255 motion on January 4, 2010.  ECF No. 168.  On February 5, 2010, Defendant filed "additional attachments" to his § 2255 motion, raising additional arguments.  ECF No. 182.  The United States of America filed a motion for summary judgment on June 1, 2010.  ECF No. 203.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court issued an order on June 1, 2010, advising Defendant of the summary judgment procedure and the possible consequences if he failed to respond adequately.  ECF No. 205.  On July 6, 2010, Defendant filed a response in opposition to the government's motion for summary judgment.  ECF No. 209.  On October 26, 2010, Defendant filed "additional attachments" to his § 2255 motion containing allegedly newly discovered evidence.  ECF No. 226.

## FACTS

Defendant was named in an four-count Indictment ("Indictment") filed on February 8, 2006.  ECF No. 2.  Count One of the Indictment charged that on or about July 28, 2003, Defendant, in a matter within the jurisdiction of the executive branch of the United States

government, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in violation of 18 U.S.C. § 1001. Count One specifically charged that during an interview conducted to determine Defendant's continuing eligibility to work at the Department of Energy ("DOE") Savannah River Site as an engineer, Defendant falsely claimed to have received a Bachelor of Science degree in engineering from California State University at Long Beach. Count Two of the Indictment charged that on or about July 31, 2001, Defendant, in a matter within the jurisdiction of the executive branch of the United States government, knowingly and willfully made and used a document which he knew to contain false, fictitious, and fraudulent statements of material fact in violation of 18 U.S.C. § 1001. Count Two specifically charged that Defendant submitted a Questionnaire for National Security Position to the DOE falsely stating that he was born in Nogales, Arizona, although Defendant knew that he was born in Nogales, Mexico. Count Three of the Indictment charged that on or about July 31, 2001, Defendant falsely and willfully represented himself to be a citizen of the United States. Count Four charged that on or about August 26, 2005, Defendant, in a matter within the jurisdiction of the executive branch of the United States government, knowingly and willfully made and used a document which he knew to contain false, fictitious, and fraudulent statements of material fact in violation of 18 U.S.C. § 1001. Count Four specifically charged that Defendant submitted an Application for Immediate Retirement to the DOE falsely stating that he was born on January 30, 1954, although Defendant knew that he was born on January 30, 1958, and therefore ineligible for retirement.

Defendant retained attorney David Braghirol as trial counsel. ECF No. 6. On February 23, 2006, Defendant entered a plea of not guilty. ECF No. 7. On June 21, 2006, the court

granted the government's motion to dismiss Count Three of the Indictment.  ECF No. 29.

Defendant's jury trial on the remaining three counts began on February 5, 2007, and concluded

on February 8, 2007.  The jury returned a verdict of guilty as to Count Two and Count Four and

was unable to reach a unanimous verdict as to Count One.  ECF No. 61.  Accordingly, the court

declared a mistrial as to Count One.  Defendant submitted a pro se motion for new trial on

February 12, 2007, and an amended pro se motion for new trial February 14, 2007.  ECF No. 66

& 70.  Trial counsel submitted a motion for new trial on Defendant's behalf on February 22,

2007. ECF No. 73.  The court denied these motions on May 24, 2007.  ECF No. 85.

Defendant retained attorneys Robert E. Hood, Joseph Preston Strom, Jr., and Mario A.

Pacella (collectively "sentencing counsel") to represent him at sentencing, and trial counsel

David Braghirol was relieved on August 1, 2007.  Defendant's sentencing hearing was held on

August 1, 2007.  Defendant was sentenced to a term of imprisonment for twelve months plus one

day as to each Count Two and Count Four, to run concurrently.  ECF No. 105.  Defendant was

also sentenced to a term of supervised release for three years as to each count, to run

concurrently.  *Id.*  Finally, Defendant was sentenced to pay restitution in the amount of

$20,437.88, with interest waived.  *Id.*  The court granted the government's motion to dismiss

Count One without prejudice.  ECF No. 104.

On August 17, 2007, Defendant filed a notice of appeal of his conviction and sentence.

ECF No. 109.  On September 10, 2007, Defendant filed, through attorney Mario Pacella, a

motion for new trial based on newly discovered evidence.  ECF No. 112.  On April 7, 2008, the

court denied Defendant's motion for new trial.  ECF No. 128.  Defendant subsequently appealed

the denial of this motion for new trial.  On July 7, 2009, the Fourth Circuit issued an opinion

affirming Defendant's conviction and sentence and affirming this court's denial of Defendant's September 10, 2007 motion for new trial.  ECF No. 152.

On September 2, 2008, Defendant filed a pro se motion for new trial, which was denied on November 10, 2008.  ECF No. 132 & 135.  Defendant appealed the denial of this motion, and the Fourth Circuit affirmed this court's denial on June 23, 2009.  ECF No. 148.  On January 16, 2009, Defendant filed a pro se motion for new trial, which was denied June 29, 2009.  ECF No. 144 & 151.  Defendant appealed the denial of this motion, and the Fourth Circuit affirmed this court's denial on March 16, 2011.  ECF No. 232.  On October 8, 2009, Defendant filed a pro se motion for new trial, which was denied on November 11, 2009.  ECF No. 159 & 162.  Defendant appealed the denial of this motion, and the Fourth Circuit affirmed this court's denial on June 1, 2011.  ECF No. 234.

## **LEGAL STANDARD**

A federal prisoner in custody may challenge the fact or length of his detention by filing a motion pursuant to 28 U.S.C. § 2255.  Relief under § 2255 is available only upon the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A defendant must prove by a preponderance of the evidence that he is entitled to relief under § 2255.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Summary judgment should be granted "in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law."  *McKinney v. Bd. of Tr. of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992).  The

moving party bears the burden of proving that there are no facts from which a fact-finder could draw inferences favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue of fact. *Id.*

The court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be resolved. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990).

## DISCUSSION

Defendant argues that his conviction and sentence must be vacated pursuant to § 2255 because his sentence was imposed in violation of the laws and Constitution of the United States. Defendant contends that both trial counsel and sentencing counsel rendered ineffective assistance, that the prosecutor committed numerous forms of misconduct, that he was denied his choice of counsel, and that his trial was infected with various other errors.

### A. Ineffective Assistance of Trial Counsel

Defendant presents a list of seventy-three reasons why his trial counsel, David Braghirol, rendered ineffective assistance. *See* ECF No. 168-2 at 13-16. Many of these reasons are vague

(e.g., trial counsel "failed to understand criminal law") or duplicative.  Defendant's essential

arguments appear to be as follows:

- Trial counsel "failed to subpoena key witnesses," namely Kevin Childress, Alicia Bradanovic, and Jean Stump.  *Id.* at 23-26, 39.

- Trial counsel failed to inform Defendant or the court that "he was noticed of pending disciplinary action by the State Bar resulting in his ultimate disbarment." *Id.* at 26-29.

- Trial counsel was unavailable and unresponsive to Defendant, repeatedly lied to Defendant, and did not prepare for trial.  *See id.* at 30, 32-34, 37-38.

- Trial counsel failed to request "original documents [u]nder Federal Criminal Rule[1] 1002 and challenge under Rules 1003 and 1005 and/or Rule 902."  *Id.* at 31.

- Trial counsel failed to prepare Defendant to testify at trial, and "informed Defendant that he could not defend Defendant if he testified and also warned him that [the p]rosecution [would] add charges if he did."  *Id.* at 32, 42.

- Trial counsel "was on medication that made him drowsy and inattentive."  *Id.* at 37.

- Trial counsel "did willfully, knowingly, and intentionally throw his own case." *Id.* at 38.

- Trial counsel had a conflict of interest, as evidenced by his statement at trial that "Dean [the prosecutor] and I are friends," and "also obtained rides to and from the court from the prosecution himself, and where the jury witnessed such conduct and may have prejudiced [Defendant]."  *Id.*

- Trial counsel failed to request the notes made by Agents Childress and Gordon, and was therefore unable to use them in cross-examination.  *Id.* at 38-39.

- Trial counsel "performed inadequate and ineffectual cross-examinations of witnesses," namely Terry Frizzell and Doris Hixon.  *Id.* at 39.

- Trial counsel "gave an inadequate closing argument."  *Id.* at 40.

---

[1]  Defendant is presumably referring to the Federal Rules of Evidence.

- Trial counsel "failed to request that the court instruct the jury on all of the theories of defense." *Id.*

- Trial counsel "failed to object to submission of evidence by the prosecution, . . . despite [Defendant] requesting that he do so." *Id.* at 41.

- Trial counsel failed to object to the continuing participation of a juror with an identified potential conflict of interest. *Id.* at 42.

- Trial counsel "failed to introduce exculpatory evidence that could be used by a skilled counsel to raise reasonable doubt." *Id.*

To prove ineffective assistance of counsel, a defendant must first show that trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. There is a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance, and the court is required to grant broad deference to scrutinizing an attorney's performance. *Id.* at 688-89. A defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

A defendant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance. That is, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction

if the error had no effect on the judgment. *Id.* "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697.

Many of Defendant's contentions are either unsupported or demonstrably false. Although trial counsel was in fact suspended from the practice of law subsequent to Defendant's trial, the first set of formal charges resulting in this suspension was filed in November 2007, months after the completion of Defendant's trial. *In re Braghirol*, 680 S.E.2d 284, 285 (S.C. 2009). Trial counsel therefore could not have informed Defendant of any "pending disciplinary action."[2] Similarly, Defendant's contention that trial counsel "failed to object to submission of evidence by the prosecution" is contradicted by the trial record. Trial counsel repeatedly objected to the introduction of both witness testimony and physical evidence, and succeeded in having some evidence excluded. Although Defendant may have desired for trial counsel to make additional objections, Defendant does not explain the legal basis for any such objections. Additionally, Defendant contends that trial counsel failed to request jury instructions on all theories of defense, but does not specify the theories for which jury instructions were not requested. The trial record shows that trial counsel attempted to present the affirmative defense theories of entrapment by estoppel and outrageous government conduct to the court before the

---

[2]    Defendant also claims to have "received a notice from the [South Carolina] Supreme Court upholding [his] complaints of ineffective assistance" against trial counsel. ECF No. 226 at 1. In fact, Defendant received a "Notice of Final Disposition" informing him that his "complaint was not dismissed, but the disposition is confidential under the provisions of the Rules for Lawyer Disciplinary Enforcement." *Id.* at 3. This does not constitute evidence of Mr. Braghirol's ineffectiveness in representing Defendant.

jury was instructed, and that instructions on these defenses were not given for lack of evidence. *See* ECF No. 84 at 35-40.

Defendant's contention that trial counsel "did willfully, knowingly, and intentionally throw his own case" is not supported by any specific allegations, and is therefore rejected. Similarly, Defendant's claim that trial counsel had a "conflict of interest" is supported only by trial counsel's statement that the prosecutor is his friend and Defendant's allegation that trial counsel traveled to and from the courthouse with the prosecutor. Even accepting this allegation as true, these facts do not establish a conflict of interest; mere friendship with opposing counsel does not show a division of loyalty. Finally, despite Defendant's claim that trial counsel "failed to introduce exculpatory evidence that could be used by a skilled counsel to raise reasonable doubt," Defendant does not identify any such evidence or explain how it would be used to create reasonable doubt.

More fundamentally, even assuming that trial counsel's performance was deficient in one or more of the ways alleged by Defendant and that these shortcomings constitute ineffective assistance, Defendant cannot establish that he was prejudiced by this allegedly deficient performance. Among other claims, Defendant alleges that he was prejudiced when trial counsel ineffectively failed to object to a juror who identified a potential conflict of interest during the trial. The record shows that on the second day of Defendant's trial, the prosecution called DOE counsel Lucy Knowles as a witness. ECF No. 81 at 80. Because Ms. Knowles had not been on the witness list at the time of jury selection, the court asked whether any juror had any prior relationship with her. *Id.* One juror then explained to the court that fifteen or sixteen years earlier, while working at the DOE Savannah River site, her security clearance had been revoked

after she tested positive for marijuana use. *Id.* at 80-81. The juror further explained that Ms.

Knowles had been involved in this incident. *Id.* The prosecutor asked whether the juror held

anything against Ms. Knowles or others as a result of this experience, and the juror stated that

she had no problem with it. *Id.* at 81. Defendant argues that this juror had a "motive to gain

favor" from the government because of her "pending action." ECF No. 168-2 at 42. The

revocation of this juror's security clearance occurred at least fifteen years earlier and was in no

sense "pending." It is unlikely that this experience would have prejudiced the juror against

Defendant, and much more likely that it would have prejudiced her against the prosecution's

witness.

Many of trial counsel's alleged deficiencies, including his failure to subpoena Kevin

Childress and Jean Stump, his failure to request the notes of Kevin Childress and Kevin Gordon,

and his "ineffectual" cross-examination of Terry Frizzell and Doris Hixon, relate to the charge

against Defendant of misstating his birthdate to take early retirement. The essence of

Defendant's defense, as argued at trial and in multiple post-trial motions, is that DOE officials

encouraged or condoned his use of the incorrect January 30, 1954 birthdate. Defendant contends

that various witnesses not called by trial counsel would have testified that DOE officials,

including Doris Hixon and Terry Frizzell, were aware that the 1954 birthdate may be incorrect

prior to their approval of Defendant's retirement. Defendant also points to "newly discovered

evidence" showing that Jean Stump, on behalf of Terry Frizzell, used the incorrect 1954

birthdate in a form requesting approval for Defendant's retirement. This form was completed at

least one week before Defendant signed the retirement application containing the 1954 birthdate

that ultimately led to his conviction. Defendant has argued on various occasions that these

actions on the part of DOE officials either show his lack of "criminal intent" or constitute "entrapment by estoppel."

Defendant's argument ignores several crucial, undisputed facts. The DOE officials involved in his retirement did not invent the incorrect 1954 birthdate; they merely used the birthdate contained in Defendant's personnel file. Defendant had supplied this incorrect birthdate on multiple occasions during his employment at the DOE. Defendant admits in his current § 2255 motion that "it is uncontested that [he] was not born on January 30, 1954," ECF No. 168-2 at 8, and he did not argue at trial that this date was in fact correct. Similarly, Defendant has not argued that he believed this date to be correct at the time when he signed his retirement application. None of Defendant's arguments concerning ineffective assistance of counsel can overcome the evidence showing that Defendant knowingly submitted a retirement application containing an incorrect birthdate on August 26, 2005.

Even assuming that the DOE officials involved in Defendant's retirement were aware that the birthdate listed in Defendant's personnel file was possibly inaccurate, Defendant has not identified evidence sufficient to support an affirmative defense of entrapment by estoppel. To assert this defense, "a defendant must demonstrate that there was 'active misleading' in the sense that the government actually told him that the proscribed conduct was permissible." *United States v. Marshall*, 332 F.3d 254, 262 (4th Cir. 2003) (quotation omitted). Defendant has not alleged that any DOE official told him that it was permissible to enter an incorrect birthdate on his retirement application or identified any evidence that would support such an allegation. Accordingly, Defendant cannot demonstrate a reasonable probability that, but for trial counsel's

alleged deficiencies, he would not have been convicted of falsely representing his birthdate on his retirement application.

Defendant also contends that if trial counsel had subpoenaed his sister, Alicia Bradanovic, she would have testified that she witnessed Defendant's birth in Nogales, Arizona, and that as a result Defendant would not have been convicted of falsely stating his birthplace. This court has previously determined, and the Fourth Circuit has affirmed, that in light of the evidence showing that Defendant was born in Mexico, Ms. Bradanovic's testimony "would not likely have produced an acquittal." ECF No. 128 at 4; *see* ECF No. 152 at 7-8. Defendant has not demonstrated a reasonable probability that, but for trial counsel's alleged deficiencies, he would not have been convicted of falsely representing his birthplace in a Questionnaire for National Security Position. Because Defendant has not met his burden in establishing that he was prejudiced by trial counsel's allegedly deficient performance, his claim of ineffective assistance of counsel is without merit.

**B.** **Ineffective Assistance of Sentencing Counsel**

Defendant also alleges that sentencing counsel's performance was deficient. Most of Defendant's allegations concern sentencing counsel's failure to properly object to or otherwise contest a sentencing enhancement for obstruction of justice and the prosecution's motion for an upward departure from the sentencing guidelines. *See* ECF No. 168-2 at 45-48. The record demonstrates that Defendant's sentence was not enhanced based on obstruction of justice, and that such an enhancement never appeared in his presentence report. The record similarly demonstrates that the prosecution's motion for upward departure was withdrawn. Defendant faults sentencing counsel for failing to object to his "greater than guidelines" sentence. *Id.* at 47.

Defendant's sentence of twelve months plus one day is, in fact, one day longer than the sentence recommended by the guidelines.  However, Defendant fails to acknowledge that this modification was made for his benefit, to render him eligible for a sentence reduction based on "good time" credits.  Defendant has demonstrated neither deficient performance by sentencing counsel nor any resulting prejudice; this claim is therefore without merit.

**C.**  **Prosecutorial Misconduct**

**1.**  **Failure to Disclose Exculpatory Evidence**

Defendant first argues that the prosecution violated the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence.  "When the [prosecution] withholds from a criminal defendant evidence that is material to his guilt or punishment, it violates his right to due process of law."  *Cone v. Bell*, 129 S. Ct. 1769, 1782-83 (2009) (*citing Brady*, 373 U.S. at 87).  Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 1783.  To establish a violation under *Brady*, "a defendant has the burden of establishing that the prosecutor suppressed evidence that was unknown to the defendant."  *United States v. Tarwater*, 308 F.3d 494, 515 (6th Cir. 2002) (*citing United States v. Agurs*, 427 U.S. 97, 103 (1976)).

Defendant identifies a sworn declaration by Doris Hixon in which she allegedly contradicts her testimony given at Defendant's trial.  Ms. Hixon testified at trial that she did not recall whether, prior to Defendant's retirement, she had told an investigator with the Inspector General's office that she knew that Defendant's "date of birth was an issue."  ECF No. 81 at 67. However, Ms. Hixon states in her declaration that in an April 13, 2004 interview with the

Inspector General's office, she informed the investigator about possible inconsistencies in Defendant's recorded birthdate. ECF No. 112-6 at 4-5. Ms. Hixon did not make this declaration until August 14, 2007, six months after the completion of Defendant's trial. The prosecution's failure to provide Defendant with a document that did not yet exist does not constitute "suppression" or "withholding" of evidence.

Defendant also contends that Lucy Knowles "provide[d] to the Prosecution withheld evidence not provided to the defense." ECF No. 168-2 at 57. Defendant refers to the cross-examination of defense witness Roger Butler, when the prosecution asked whether Mr. Butler had ever seen a particular document. Because Mr. Butler was unsure, the prosecutor obtained a copy from Ms. Knowles, who was still present in the courtroom, and showed it to Mr. Butler. ECF No. 81 at 160. As the trial transcript shows, this document was written by Defendant himself and submitted to the DOE in response to the proposal to terminate his employment. This evidence was not "unknown" to Defendant, and Defendant does not explain how it might be "exculpatory."

Defendant finally contends that the prosecution suppressed a "Request for Personnel Action" signed by Jean Stump, on behalf of Terry Frizzell, on August 18, 2005. This document seeks approval for Defendant's retirement based on the incorrect 1954 birthdate. *See* ECF No. 112-4 at 2-3. Defendant argues that because this document was authored before he completed his August 26, 2005 retirement application, it shows that the DOE had authorized or condoned his use of the 1954 birthdate. As discussed above, DOE officials obtained the initial approval of Defendant's retirement based on the 1954 birthdate because this date was in Defendant's personnel file after having been submitted multiple times by Defendant. Even if the DOE

14

officials involved were aware that this birthdate was inconsistent with other birthdates reported by Defendant, this neither negates the fact that Defendant made a knowingly false statement of material fact nor supports a defense of entrapment by estoppel. Because Defendant has not demonstrated a reasonable probability that he would not have been convicted if this evidence had been disclosed, any failure on the part of the prosecution to disclose this evidence to Defendant does not violate Defendant's right to due process of law.

     **2.**      **Knowing Introduction of Perjured Testimony**

Defendant alleges that the prosecution knowingly introduced perjured testimony at trial. The presentation of known false evidence by the prosecution, or the failure to correct such evidence, requires a new trial if there is "any reasonable likelihood" that the false testimony could have affected the judgment of the jury. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). Defendant contends that although Doris Hixon and Terry Frizzell both testified at trial that they did not recall questions being raised in 2004 concerning inconsistencies in Defendant's reported birthdate, other evidence demonstrates that they were aware of these inconsistencies. Both witnesses testified at trial that they were not certain whether they had been informed about these inconsistencies at the time in question, and there is no further evidence to suggest that they were testifying falsely rather than simply failing to remember an immaterial fact. Furthermore, there is no evidence showing that the prosecution was aware of false testimony but failed to correct it. Finally, for the reasons already explained, there is no reasonable likelihood that this testimony, even if false, affected the judgment of the jury in finding Defendant guilty. This claim is therefore without merit.

### 3.    Inaccurate and Prejudicial Statements by the Prosecution

Defendant raises a number of challenges based on the statements and arguments of the prosecution during trial. *See* ECF No. 168-2 at 57-60. Defendant alleges that the prosecutor "either exaggerated the truth or presented arguments NOT part of the record or not part of [the] trial or any testimony," and that the prosecutor "testified on behalf of [his] witnesses." *Id.* at 57-58. The record shows that the prosecutor did not in fact testify at Defendant's trial; rather, Defendant objects to various statements made by the prosecutor during closing arguments arguing that certain inferences should be drawn from the evidence presented.[3] Defendant further alleges that the prosecutor "highly prejudiced [him] with . . . inflammatory and false statements" by stating that the case was "about national security." *Id.* at 60. Defendant did not object on any of these grounds during trial, and did not raise any of these issues on direct appeal.

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). To demonstrate cause, a defendant must show that "some objective factor external to the defense impeded counsel's efforts" to raise the issue in an earlier proceeding. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quotation omitted). Such an "objective factor" may include interference by officials or a factual or legal basis of a claim that

---

[3]    For example, Defendant contends that the prosecutor "testified for Defendant['s] deceased father" when he stated that "Mr. Salazar's father probably knew the difference between a six-month old baby and an 18-month old baby." ECF No. 168-2 at 59. Defendant similarly contends that the prosecutor "testified for [Defendant's] assumed knowledge," presumably when the prosecutor argued that Defendant made false statements knowingly. *Id.*

was not reasonably available to counsel.  *Id.* at 493-94.  Additionally, ineffective assistance of counsel satisfies the "cause" requirement.  *Id.* at 494.  To demonstrate prejudice, a defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170.

Even assuming, as Defendant alleges, that trial counsel rendered ineffective assistance, Defendant has not alleged that his appellate counsel was ineffective.  Furthermore, there was no official interference preventing Defendant from raising these claims on direct appeal, and no factual or legal basis supporting these claims that was unavailable at that time.  Because Defendant cannot demonstrate cause for failing to raise these claims on direct appeal, they are procedurally barred from consideration in the present motion.

### 4.    Improper Threats by the Prosecution

Defendant alleges that both trial counsel and appellate counsel "made it clear on numerous occasions that the prosecution would press more charges if [he] testified."  ECF No. 168-2 at 64.  Defendant does not allege that the prosecutor directly made any such threats to him or to his attorneys or identify any evidence showing that such threats were made.  Furthermore, Defendant does not specify which additional charges were allegedly threatened.  The only evidence of any such "threat" being made comes from an affidavit by Defendant's trial counsel, submitted by the government.  Trial counsel states that he explained to Defendant that the prosecutor would have an opportunity to cross-examine Defendant if he testified, and that if Defendant testified falsely he could be charged with perjury or given a sentencing enhancement

for obstruction of justice. ECF No. 203-3 at 4-5. This advice is accurate and appropriate, and Defendant provides no further evidence of any improper threats by the prosecutor.

### 5.      Disclosures to the Press by the Prosecution

Defendant alleges that the prosecutor "disclosed significant issues to the press . . . regarding the alleged charges against [him] prior to any hearing or action taken by the court" on several occasions, causing "numerous persons from the jury pool [to be] disqualified due to this press information." ECF No. 168-2 at 69. Defendant does not specify which information was disclosed to the press or explain how he was prejudiced by such disclosures; rather, he states that it is "difficult to determine the full extent of the damage caused by this inappropriate disclosure." *Id.* The government's brief states that "[a]fter the grand jury returned its indictment, the government issued a standard press release." ECF No. 203-1 at 24. Defendant has not demonstrated that any information provided to the press by the prosecution amounted to a violation of federal law or the Constitution, or that any such disclosure affected the outcome of his trial. Accordingly, this claim is without merit.

### D.      <u>Denial of Defendant's Choice of Counsel</u>

Defendant contends that the trial court committed a "structural error" causing "fundamental defect and miscarriage of justice" by refusing to allow Defendant to dismiss trial counsel on the third day of his trial, and by refusing to allow Defendant to make his own closing argument. ECF No. 168-2 at 75. "A defendant's right to have a lawyer of his or her own choosing is an essential element of the Sixth Amendment right to assistance of counsel." *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994). However, this right is not absolute, and a court "must weigh the defendant's right to choose counsel against the countervailing state

interest in proceeding with prosecutions on an orderly and expeditious basis." *United States v. Corporan-Cuevas*, 35 F.3d 953, 965 (4th Cir. 1994). In determining whether the trial court abused in discretion in denying a defendant's motion to substitute counsel, a reviewing court considers "the timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *Id.* (quotation omitted).

On the third day of trial, after the defense had called its final witness, Defendant attempted to dismiss trial counsel. *See* ECF No. 84 at 27. In an ex parte proceeding, Defendant listed numerous reasons why he believed trial counsel's performance to be deficient. *See* ECF No. 82 at 2-5. When the court asked trial counsel whether he wished to respond, trial counsel stated: "If I have been released, I don't know what capacity I have to defend or any desire to defend myself against the allegations made by my client at this point." *Id.* at 5. Trial counsel explained that he did not feel that he could ethically continue to represent Defendant in light of Defendant's expressions of displeasure or defend himself against Defendant's allegations, and requested that he be relieved by the court. *Id.* The court concluded that Defendant's request was untimely, and that dismissing trial counsel at that point would disrupt the orderly administration of justice. *Id.* at 7. The court noted that on the first day of trial, Defendant had been asked by the court whether he was satisfied with counsel's performance up to that point and had responded that he was satisfied. *Id.* at 6. The court further noted that Defendant's stated reasons were not adequate to release trial counsel, stating that Defendant "complain[ed] of matters of trial strategy for which there is a wide acceptable variety of opinion." *Id.* at 8. The court found that Defendant had previously stated that he had time to confer with trial counsel before trial,

and that Defendant had actively participated in his defense by frequently consulting with trial counsel. *Id.* Accordingly, the court denied Defendant's request to dismiss trial counsel.

The court's denial of Defendant's untimely request to dismiss trial counsel did not violate Defendant's Sixth Amendment right to counsel. In *Corporan-Cuevas*, the Fourth Circuit held that the defendant's request to dismiss trial counsel on the first day of trial was "clearly . . . untimely under all but the most exigent circumstances." 35 F.3d at 956. Defendant's request to dismiss trial counsel on the third day of trial, after all witnesses had been presented and only closing arguments remained, was all the more untimely. Defendant's complaints about trial counsel's performance did not constitute "the most exigent circumstances." Similarly, because Defendant continued to be represented by counsel, the court did not err in requiring that Defendant's closing argument be made through counsel. Defendant's claim is without merit.

## E.  <u>Other Claims</u>

Defendant raises various arguments alleging "fundamental defect and miscarriage of justice" based on his affirmative defense of entrapment by estoppel. *See* ECF No. 168-2 at 70-75. As explained in the above discussion of ineffective assistance of counsel, a defense of entrapment by estoppel is not supported by the evidence introduced at trial or by the additional evidence now presented by Defendant. The court did not err in refusing to dismiss the charges against Defendant based on entrapment by estoppel, or in refusing to instruct the jury on this defense. Defendant also raises various "structural error" claims based on the introduction of perjured testimony, the withholding of exculpatory evidence, and the refusal of Defendant's request to dismiss counsel. ECF No. 74-75 & 78-85. These claims have been previously discussed and rejected.

**CONCLUSION**

Even assuming that Defendant's factual claims are true, Defendant has not demonstrated that he is entitled to relief under § 2255. Accordingly, the government's motion for summary judgment is granted. Because the resolution of Defendant's § 2255 motion does not depend upon disputed issues of fact, an evidentiary hearing is unnecessary.

**CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2255 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that Defendant has not made the requisite showing. Accordingly, the court denies a certificate of appealability.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

November 28, 2011
Columbia, South Carolina